UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:                                          CASE NO.

**TERRY L. COMPTON**                             **04-13581**
**MARGARET C. COMPTON**

DEBTORS                                         CHAPTER 7

**MARTIN A. SCHOTT, TRUSTEE**                    ADVERSARY NO.

PLAINTIFF                                        **05-1044**

V.

**FORD MOTOR CREDIT COMPANY**

DEFENDANT

**MEMORANDUM OPINION**

Trustee Martin A. Schott sues Ford Motor Credit ("Ford") to avoid a security

interest in the debtors' 2001 Ford Mustang.  The security interest was a preference under

11 U.S.C. §547 and the trustee is entitled to avoid Ford's lien. [1]

**Facts**

In June 2004, Ford sold debtors Terry and Margaret Compton a 2001 Ford

Mustang which they had been leasing from Ford for the previous three years. [2]  They

---

[1]  The parties agreed to submit this matter on stipulations, exhibits and briefs.  Order Granting Joint Motion
to Submit Matter on Stipulations and Briefs. Pl. 31.

[2]  Joint Stipulation of Facts, ¶12, Pl. 34.  The Louisiana Department of Public Safety and Corrections,
Office of Motor Vehicles issued a certificate of title documenting the lease on July 19, 2001.  The title
reflected that Ford held a lien on the car.  Joint Stipulation, ¶13.  Ford released this lien on the vehicle on
July 12, 2004.  Defendant's Exhibit 2, attached to Pl. 35, Defendant's Submission of Exhibits.

signed a promissory note and security agreement granting Ford a security interest in the

Mustang on June 24, 2004,[3] and took delivery of the vehicle as owners the same day.[4]

The parties stipulated that July 29, 2004, the lien date reflected on the certificate

of title, was the date on which the Office of Motor Vehicles received the security

agreement granting the security interest in the Mustang.[5]

The Comptons filed chapter 7 on October 27, 2004.  They intended to surrender

the Mustang to Ford.[6]

## Analysis

Section 547(b) of the Bankruptcy Code allows a trustee to avoid the transfer of an

interest of the debtor in property –

> (1)  to or for the benefit of a creditor;

> (2)  for or on account of an antecedent debt owed by the debtor
> before such transfer was made;

> (3)  made while the debtor was insolvent;

> (4)  made –

>> (A)  on or within 90 days before the date of the filing of the
>> petition; and

>> (B)  between 90 days and one year before the date of the
>> filing of the petition, if such creditor at the time of such
>> transfer was an insider; or

---

[3]  Joint Stipulation, ¶6.  The document granting the security interest is actually entitled "Louisiana Simple Interest Property Retail Installment Contract."  Defendant's Exhibit 5, Pl. 35.

[4]  Joint Stipulation, ¶7.

[5]  Joint Stipulation, ¶8.  Under Louisiana law, a retail installment contract that provides the name of the buyer, the name of the seller and a description of the motor vehicle purchased satisfies the requirements for a financing statement for purposes of perfecting the security interest in the motor vehicle pursuant to La. R.S. 32:710(A).  *In re Argo Financial, Inc.*, 337 F.3d 516, 520 n.2 (5th Cir. 2003).  The installment contract satisfies the statutory requirements.

[6]  Statement of Intentions, Pl. 6, Case No. 04-13581.

(5) that enables such creditor to receive more than such creditor
would receive if –

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the
extent provided by the provisions of this title.

The threshold issue is the date on which Ford's security interest was perfected,

because that is the date of the transfer for purposes of applying Bankruptcy Code section

547.  Pursuant to 11 U.S.C. §547(e)(2), a transfer is made –

(A) at the time such transfer takes effect between the transferor
and the transferee, if such transfer is perfected at, or within 10 days
after such time, except as provided in subsection (c)(3)(B);

(B) at the time such transfer is perfected, if such transfer is perfected
after such 10 days; or

(C) immediately before the date of the filing of the petition, if such
transfer is not perfected at the later of –

(i)     the commencement of the case; or

(ii)     10 days after such transfer takes effect between the
transferor and the transferee.

According to section 547(e)(3), a transfer cannot be made until the debtor has "acquired

rights in the property transferred."

In other words, a trustee can avoid a transfer "made" according to section

547(e)(2) within the 90 day preference period set out in §547(b)(4), that meets the other

requirements of section 547(b), unless 11 U.S.C. §547(c) excepts the transfer from

avoidance.

The only exception that may apply to the challenged transaction is that in section

547(c)(3).  Subsection (c)(3) excepts from the trustee's avoidance powers a transfer that

creates a security interest in property acquired by the debtor –

> (A) to the extent such security interest secures new value that was –

>> (i)    given at or after the signing of a security agreement that contains a description of such property as collateral;

>> (ii)   given by or on behalf of the secured party under such agreement;

>> (iii)  given to enable the debtor to acquire such property; and

>> (iv)   in fact used by the debtor to acquire such property; and

> *(B) that is perfected on or before 20 days after the debtor receives possession of such property.*

(Emphasis added).  This subsection protects from avoidance a purchase money security

interest[7] perfected not more that 20 days after the debtor takes possession of property

subject to the security interest.

Under Louisiana law, a security interest in a motor vehicle is perfected as of the

time the financing statement reflecting the security interest is received by the Office of

Motor Vehicles, "so long as such receipt is validated by the secretary " of the Department

of Public Safety and Corrections ("DPS").  La. R.S. 32:710(A).  *See also*, La. R.S. 10:9-

516(a)(2).[8]

---

[7]  Under La. R.S. 10:9-103(b)(1), a purchase money security interest is one for goods that are purchase-money collateral with respect to the particular security interest.  *Purchase-money collateral* is defined as goods that secure a purchase-money obligation.  La. R.S. 10:9-103(a)(1).  A *purchase-money obligation* is an obligation "incurred as part or all of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used."  La. R.S. 10:9-103(a)(2).

[8]  Louisiana Revised Statute 10:9-516(a)(2) states that a financing statement for a motor vehicle "is filed when received and such receipt is validated by the secretary of the Department of Public Safety and Corrections, office of motor vehicles."

The debtors took possession of the Mustang as owners on June 24, 2004, the day they granted Ford the security interest in the car.  The parties stipulated that DPS received the security agreement creating the security interest in Ford's favor on July 29, 2004, and the record contains evidence supporting that stipulation.[9]  Thus, Ford's security interest in the Mustang was perfected on July 29, 2004.[10]

Because the lien was perfected on July 29, 2004, Ford's argument that the transfer occurred when it took effect between the parties on June 24, 2004 is without merit. Bankruptcy Code §547(e)(2)(A) would treat the transfer as having taken place on June 24, 2004 only if it had been perfected within ten days after the security interest was created and the transfer took effect between Ford and the debtors.  Because it was not perfected within that time, the transfer was made for purposes of 11 U.S.C. §547 only once the security interest was perfected on July 29, 2004.  11 U.S.C. §547(e)(2)(B).

Bankruptcy Code section 547(c)(3) also is inapplicable.  Even if Ford's lien was a purchase money security interest, it was not *perfected* on or before 20 days after June 24, 2004, when the debtors took possession of the car.  The perfection of the security interest

---

[9]  July 29, 2004 is the date noted as the lien date on the August 5, 2004 certificate of title issued for the 2001 Mustang.  Exhibit 5, Pl. 35.  The title bears the signature and seal of the Vehicle Commissioner of Louisiana and the accompanying notation that the commissioner is certifying the mortgage on the vehicle listed on the certificate, in accordance with the provisions of La. R.S. 32:710(E).  Moreover, the Retail Installment Contract bears the stamp of the Office of Motor Vehicles and the date July 29, 2004.  Exhibit 6, Pl. 35.  These documents in combination suggest that the DPS received the security agreement on July 29, 2004.  Thought there is no evidence in the record of a separate certification from the secretary of the DPS validating receipt of the security agreement, there is nothing in Louisiana statues or case law that requires such a document to prove receipt.  Indeed, La. R.S. 10:9-520(c) provides that a filed financing statement is effective even though the filing office is permitted to *refuse* it for specified technical defects (outlined in La. R.S. 10:9-516(b)).

[10]  Ford's security interest in the Mustang is a purchase money security interest under La. R.S. 10:9-103(b)(1).  La. R.S. 10:9-309(1) provides that a purchase money security interest is perfected when it attaches *"except as otherwise provided in R.S. 10:9-501(a)(1) with respect to titled motor vehicles . . . ."* (Emphasis added.)  La. R.S. 10:9-501(a) specifies that the DPS is the proper place to file a financial statement to perfect a security interest in a motor vehicle.

– the transfer — took place on July 29, 2004, and thus fell within the 90-day period
before the debtors' October 27, 2004 bankruptcy filing.

The record contains ample evidence of the remaining elements of the preference.
The transfer was for the benefit of Ford, and was made in connection with an antecedent
debt incurred by the debtors on June 24, 2004.  The parties stipulated that the debtors
were insolvent on July 29, 2004.[11]  Finally, the claims register reflects unsecured claims
totaling $10,675.63.  Therefore, if Ford's security interest is avoided and the trustee sells
the Mustang, Ford's share of the proceeds would be less than its recovery on a secured
claim.

Because no basis for excepting the transfer applies, the perfection of the security
interest was a preference voidable under 11 U.S.C. §547(b).

Ford argues in the alternative that it enjoys a vendor's privilege under Louisiana
law.  It contends that the privilege arose the moment the debtors took possession of the
Mustang before the 90-day preference period.  Ford reasons, therefore, that the trustee
cannot avoid the privilege as a preferential transfer.

Articles 3217 and 3227 of the Louisiana Civil Code provide for a privilege in
favor of the vendor on the unpaid portion of the price of a movable remaining in the
purchaser's possession.  However, the rights of a vendor under Civil Code article 3227
are subordinate to the rights of a party holding a security interest under Chapter 9 of the
Louisiana Commercial Laws.  La. R.S. 9:4770.[12]  Additionally, La. R.S. 10:9-322(h)
provides that "[a] security interest has priority over a conflicting lien . . . in the same

---

[11]  Joint Stipulation, ¶9.

[12]  Louisiana R.S. 9:4770 states that "[w]hether a sale was entered into before or after January 1, 1990, the
rights of a vendor under Civil Code Articles 2561, 3217(7), and 3227 . . . are subordinate to the rights of a
secured party with a security interest under Chapter 9 of the Louisiana Commercial laws."